# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ANTONIO D. WASHINGTON,

    Defendant.

Case No. 3:15-cr-00104-SLG

## ORDER RE SECTION 2255 PETITION

Before the Court at Docket 48 is Defendant Antonio D. Washington's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed on July 3, 2017.[1] The Government responded at Docket 69; Defendant's reply was filed thereafter at Docket 71. Oral argument was not requested and was not necessary to the Court's determination.

## BACKGROUND

On December 16, 2015, a Grand Jury indicted Mr. Washington on two counts of Distribution of Methamphetamine (Counts One and Two), one count of Distribution of 50 Grams or More of Actual Methamphetamine (Count Three), and one count of Distribution of 5 Grams or More of Actual Methamphetamine (Count Four).[2] On March 16, 2016, Mr.

---

[1] In January 12, 2018, Mr. Washington's counsel, Michael B. Bigelow, filed a Notice of Statement of Intent to Stand on Existing § 2255 Motion, Supplemented by Points and Authorities. *See* Docket 64.

[2] *See* Docket 2 (Indictment) at 1–3; 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and (b)(1)(B).

Washington pleaded guilty to Count Three.[3] Mr. Washington waived most of his rights to collaterally attack the conviction, except he retained the right to assert that his plea was involuntary and that his trial counsel was ineffective.[4] Count Three carried a minimum sentence of 120 months imprisonment and a maximum sentence of life imprisonment.[5] On July 5, 2016, the Court sentenced Mr. Washington to 162 months on Count Three. The remaining counts were dismissed at that time.[6] Mr. Washington timely filed this motion seeking relief on July 3, 2017.[7]

## LEGAL STANDARD

**1. Ineffective Assistance of Counsel**

In order to succeed on an ineffective assistance of counsel claim, a petitioner must satisfy the two-pronged test set forth in *Strickland v. Washington*, which requires him to show both deficient performance and prejudice.[8] Deficient performance requires a showing that trial counsel's representation "fell below an objective standard of reasonableness" as measured by prevailing professional norms.[9] There is a "strong presumption that counsel's conduct falls within the wide range of professional

---

[3] *See* Docket 27.

[4] *See id.* at 10.

[5] *See* 21 U.S.C. § 841(b)(1)(A)(viii).

[6] *See* Docket 41 (Judgment) at 1–2.

[7] *See generally* Docket 48 (§ 2255 Petition).

[8] 466 U.S. 668, 687 (1984).

[9] *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).

assistance."[10]  To establish prejudice, a petitioner must show a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different."[11]  "Where ineffective assistance leads a petitioner to accept a plea bargain, a different result means that 'but for counsel's errors, [the petitioner] would either have gone to trial or received a better plea bargain.'"[12]  Failure to meet either prong is fatal to a petitioner's claim.[13]

**2. Voluntariness of Plea**

To determine the voluntariness of a plea, the Court considers "the totality of the circumstances."[14]  The plea must "represent[] a voluntary and intelligent choice among

---

[10] *Strickland*, 466 U.S. at 689.

[11] *Id.* at 694.

[12] *United States v. Rodriguez-Vega*, 797 F.3d 781, 788 (quoting *United States v. Howard*, 381 F.3d 873, 882 (9th Cir. 2004)).

[13] *See Gonzalez v. Wong*, 667 F.3d 965, 987 (9th Cir. 2011) (quoting *Strickland*, 466 U.S. at 697) ("Because failure to meet either prong is fatal to [a defendant's] claim, there is no requirement that [courts] 'address both components of the inquiry if the defendant makes an insufficient showing on one.'").

[14] *United States v. Kaczynski*, 239 F.3d 1108, 1114 (9th Cir. 2001) (citing *Iaea v. Sunn,* 800 F.2d 861, 866 (9th Cir.1986)).

the alternative courses of action open to the defendant."[15]  A "guilty plea is void if it was 'induced by promises or threats which deprive it of the character of a voluntary act.'"[16]

### 3. Evidentiary Hearing

"Unless the [§ 2255] motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."[17]  "In determining whether a hearing and findings of fact and conclusions of law are required, '[t]he standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief could be granted.'"[18]  To "summarily dismiss a § 2255 motion," a court must find that "the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'"[19]

"Solemn declarations in open court carry a strong presumption of verity."[20]  In

---

[15] *Kaczynski*, 239 F.3d at 1114 (quoting *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)).

[16] *Id.* (quoting *Sanchez v. United States,* 50 F.3d 1448, 1454 (9th Cir.1995)).

[17] 28 U.S.C. § 2255(b).

[18] *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011) (quoting *United States v. Schaflander,* 743 F.2d 714, 717 (9th Cir.1984)).

[19] *Id.* at 1062–63 (9th Cir. 2011) (quoting *Schaflander,* 743 F.2d at 717).  "The Supreme Court has long sought to ensure that the criminal trial remains 'the main event,' not a 'tryout on the road' for a later habeas proceeding."  *Id.* at 1069 (Noonan, J., dissenting) (quoting *Coleman v. Thompson,* 501 U.S. 722, 747 (1991)).

[20] *United States v. Rubalcaba*, 811 F.2d 491, 494 (9th Cir. 1987) (quoting *United States v. Moore*, 599 F.2d 310, 314 (9th Cir. 1979)).

*United States v. Espinoza*,[21] the Ninth Circuit held that although a court must hold an evidentiary hearing "when a prisoner's allegations of a coerced plea are based on alleged occurrences entirely outside the record,"[22] a "court may expand the record with other documentary evidence prior to determining the need for an evidentiary hearing."[23] "In *Espinoza*, [the Ninth Circuit] recognized the principle . . . that no evidentiary hearing is necessary when the issue of credibility can be 'conclusively decided on the basis of documentary testimony and evidence in the record.'"[24] Although *Espinoza* found the record in that case to be insufficient for summary dismissal of the § 2255 claim, "[s]ince *Espinoza* provides no description of this insufficient record, it cannot guide us as to what constitutes a 'conclusive' record. *Espinoza* does instruct us that even where the record before the district court is insufficient, the court is not automatically required to conduct an evidentiary hearing."[25]

## DISCUSSION

Mr. Washington seeks relief on two grounds. First, he claims that he received ineffective assistance of trial counsel.[26] Second, he asserts that his guilty plea was

---

[21] 866 F.2d 1067 (9th Cir. 1988).

[22] *Id.* at 1069 (citing *Mayes v. Pickett*, 537 F.2d 1080, 1083 (9th Cir. 1976)).

[23] *Id.* at 1070 (citation omitted).

[24] *Shah v. United States*, 878 F.2d 1156, 1160 (9th Cir. 1989) (quoting *Espinoza*, 866 F.2d at 1069) (internal citation omitted).

[25] *Id.* (quoting *Espinoza*, 866 F.2d at 1070).

[26] *See* Docket 48 at 2.

involuntary.[27]   The Government argues these claims are "patently false."[28]

**1. Ineffective Assistance of Counsel**

Mr. Washington claims that his trial counsel was ineffective in two respects.  First, he alleges that his trial counsel "ignored readily available information tending to indicate that [Mr. Washington] was under severe emotional duress after being assaulted by the arresting officers and another inmate at the jail, and that [Mr. Washington] was detoxing from narcotics: heroin, methamphetamines and cocaine."[29]   Second, Mr. Washington states that his "[c]ounsel proceeded to intentionally mislead [Mr. Washington] into a non-binding plea-agreement, resulting in a sentence of 42 months beyond the scope of the plea-agreement [Mr. Washington] believed he accepted."[30]  Mr. Washington alleges that his trial counsel had guaranteed that Mr. Washington would receive a 120-month sentence ("minimum sentence promise").

As a threshold matter, the Government points to Mr. Washington's waiver of most collateral attacks in the plea agreement.[31]   In his plea agreement, Mr. Washington retained his right to make an ineffective assistance challenge "based on information not now known to the defendant and which, in the exercise of reasonable diligence, could not be known by the defendant at the time the Court imposes [the] sentence . . . ."[32]   Mr.

---

[27] *See id.* at 4.

[28] Docket 69 at 2.

[29] Docket 48 at 2.

[30] Id.

[31] *See* Docket 69 at 5; Docket 24 (Plea Agreement) at 10.

[32] Docket 24 at 10; *see also* Docket 69 at 5.

Washington does not specify the date of the alleged assault(s), but Mr. Washington's reference to an "arresting officer" [33] suggests that an assault(s) may have occurred at the time of his December 2015 arrest.[34] Mr. Washington signed his plea agreement on March 15, 2016.[35] His change of plea hearing took place nearly two weeks later, on March 28, 2016.[36] Over three more months passed before Mr. Washington's July 6, 2016 sentencing hearing.[37] Although Mr. Washington alleges that his trial counsel continued his minimum-sentence assurances through the sentencing hearing, Mr. Washington's trial counsel had allegedly been making those assurances for months, beginning in March 2016.[38] Similarly, the alleged assault(s) and detoxification were known to Mr. Washington for several months in advance of sentencing.[39] These allegations fail because they were "known by the defendant at the time the Court impose[d the] sentence."[40] Nevertheless, the Court addresses the merits of Mr. Washington's allegations below.

a. *Emotional distress allegation*

First, Mr. Washington alleges that his trial counsel "ignored readily available information tending to indicate that [Mr. Washington] was under severe emotional duress

---

[33] Docket 48 at 3.

[34] *See* Docket 34 (Revised Presentence Investigation Report) (sealed) at 3.

[35] *See* Docket 24 at 13.

[36] *See* Docket 27 (Minute Entry for Change of Plea Hearing).

[37] *See* Docket 60 (Sentencing Transcript) at 1.

[38] *See* Docket 48 at 3.

[39] *See id*.

[40] Docket 24 at 10; *see also* Docket 69 at 5.

after being assaulted by the arresting officers and another inmate at the jail, and that [Mr. Washington] was detoxing from narcotics: heroin, methamphetamines and cocaine."[41] He provides no dates for the alleged assault(s) or detoxification;[42] however, he had been in custody since December 2015.[43] Mr. Washington alleges his trial counsel "advised [him] that the US Attorney's Office had offered a sentence of 'no more than 120 months,' for only a short period of time (3/11/16 - 3/16/16) . . . ."[44] At the time that trial counsel "brought this plea-agreement to [Mr. Washington]," however, Mr. Washington alleges he "was being housed in the 'Intensive Management Unit' of the Anchorage Jail, from 3/10/16 to 4/1/16; as a result of having been assaulted by the arresting officer and another prisoner, as well as detoxing from narcotics: heroin, methamphetamine and cocaine."[45]

Mr. Washington's June 26, 2017[46] declaration makes no reference to an alleged assault(s).[47] Regarding the alleged assault(s), Mr. Washington's trial counsel asserts that

---

[41] Docket 48 at 2.

[42] *See generally id.* Mr. Washington did, however, certify under penalty of perjury his § 2255 motion. *See id.* at 6–7.

[43] *See* Docket 8 (Minute Entry for Arraignment).

[44] Docket 48 at 3.

[45] *Id*. Mr. Washington's reference to an "arresting officer" may refer to the officer who placed him in an Intensive Management Unit in March 2016, rather than the officer who placed him under arrest in 2015. However, Mr. Washington has failed to further support this claim in his declaration. *See generally* Docket 49 (Declaration of Antonio D. Washington). Even if the alleged assault occurred in March 2016, another three months passed before Mr. Washington's July 6, 2016 sentencing, but Mr. Washington did not raise this issue until June 2017. *See* Docket 60 at 1; Docket 48 at 6–7 (showing that Mr. Washington certified his § 2255 motion on June 26, 2017).

[46] Mr. Washington signed his declaration on June 26, 2017, but it was not filed until July 3, 2017. *See* Docket 49 at 3–4.

[47] *See generally id*.

"I have no idea what Mr. Washington is referring to here. I had no information that any such alleged assaults had occurred."[48] Even if Mr. Washington was under some distress due to detoxification and an alleged assault(s) when he signed his plea agreement on March 15, 2016,[49] another 13 days passed before his March 28, 2016 change of plea hearing.[50] At this hearing, Mr. Washington stated that he was not under the influence of alcohol or drugs, his thinking was not impaired by any prescription medication, he was in a sufficient mental and emotional state to proceed with his plea, and no other issues affected his ability to change his plea.[51] The Court finds that, "when viewed against the record," Mr. Washington's emotional distress claim is "'palpably incredible or patently frivolous.'"[52] Accordingly, relief on this basis will be denied. An evidentiary hearing was not necessary to the Court's determination.

*b. Minimum-sentence promise allegations*

Second, Mr. Washington states that his "[c]ounsel proceeded to intentionally mislead [Mr. Washington] into a non-binding plea-agreement, resulting in a sentence of 42 months beyond the scope of the plea-agreement [that Mr. Washington] believed he accepted."[53] After the issuance of the presentence report, trial "counsel again reassured

---

[48] Docket 70 (Declaration of Lance C. Wells) at 4.

[49] *See* Docket 24 at 13.

[50] *See* Docket 27.

[51] *See* Docket 69-1 at 5.

[52] *Withers*, 638 F.3d at 1062–63 (quoting *Schaflander,* 743 F.2d at 717).

[53] Docket 48 at 2. Mr. Washington supports this allegation with his declaration, dated June 26, 2017. *See generally* Docket 49.

[Mr. Washington] that he would receive a sentence of 'no more than 120 months' based on the plea-agreement he allegedly negotiated with the US Attorney's Office."[54] Mr. Washington claims that, at sentencing, trial counsel again "stated that he, 'would take care of it,' again assuring [Mr. Washington] that he should have received the 120 months sentence according to plea-agreement he advised [Mr. Washington] to sign."[55] Mr. Washington also asserts in the declaration, but not in the appendix to his motion, that at sentencing he "stood up and stated [his] objection" to a 162-month sentence.[56]

In his reply to the Government's opposition, Mr. Washington states that the Government's submission with its brief of a declaration by Mr. Washington's trial counsel "would seem to be a concession by the government that movant has made a prima facie case of trial counsel's deficient performance and a prima [facie] case of prejudice, in which case an evidentiary hearing is required."[57] Mr. Washington concedes that his trial counsel "did an excellent job" in avoiding the career offender designation, but he argues that "the fact trial counsel had to work as hard as he did to get back to even . . . renders it more than likely he was taken . . . aback that [the career offender guidelines] might apply in the first place."[58]

---

[54] *Id.* at 3. The probation officer recommended a sentence of 276 months. *See* Docket 30 (Sentencing Recommendation) (sealed) at 1. The Government recommended a sentence of 240 months. *See* Docket 35 (Government's Sentencing Memorandum) at 2. Mr. Washington recommended a sentence of 120 months. *See* Docket 38 (Defendant's Sentencing Memorandum) at 14.

[55] *Id.* at 3–4.

[56] Docket 49 at 3.

[57] Docket 71 at 2.

[58] Docket 66 (Points and Authorities in Support of Section 2255 Motion) at 9–10. Section 4B1.1(a) of the U.S. Sentencing Guidelines Manual at that time designated as a career offender a

The plea agreement does not state that the parties agreed on a 10-year sentence. To the contrary, the parties' agreement clearly sets forth "[t]he statutory penalties applicable to the charge to which [Mr. Washington] is pleading guilty," including "[a] mandatory minimum sentence of 10 years up to life imprisonment."[59] The "parties [were] free to recommend to the Court their respective positions on the appropriate sentence to be imposed . . . ."[60] Later in the agreement, Mr. Washington affirmed his "understand[ing] that no one, including my attorney, can guarantee the outcome of my case or what sentence the Court may impose if I plead guilty."[61] He also acknowledged that "[t]here are no other promises, assurances, or agreements the United States has made or entered into with me that have affected my decision to enter any plea of guilty or to enter into this

---

defendant eighteen years or older who was being sentenced for "a felony that is either a crime of violence or a controlled substance offense[ and who] has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S. Sentencing Guidelines Manual § 4B1.1(a) (U.S. Sentencing Comm'n 2015). Mr. Washington's Revised Presentence Investigation Report ("Report") designated him as a career offender, which resulted in a total offense level of 37. *See* Docket 34 (sealed) at 9–11; *see also* U.S. Sentencing Guidelines Manual § 4B1.1(b)(1). One of the prior felonies that the Report included in its career offender calculation was Mr. Washington's prior harassment conviction. *See* Docket 34 (sealed) at 10; *see also* WASH. REV. CODE § 9A.46.020(2)(b). The Report characterized Mr. Washington's harassment conviction as a crime of violence "[b]ecause the offense had an element, the use, or threatened use of physical force against the person of another . . . ." Docket 34 (sealed) at 10; *see also* WASH. REV. CODE § 9A.46.020(2)(b). Mr. Washington's trial counsel objected that the Washington statute was "over-inclusive and therefore not a violent felony under the" appropriate legal analysis." Docket 34 (sealed) at 45. As a result, trial counsel asserted, Mr. Washington "should not [have been] considered a career offender" and should have had a total offense level of 27. *Id.* The Court agreed with trial counsel's analysis and declined to designate Mr. Washington as a career offender. *See* Docket 60 at 17–18 (stating that the Court was "not persuaded that the . . . adjustment for the career criminal applies in this particular case"). Instead, the Court determined that Mr. Washington's resulting total offense level was 27, and his Guidelines range was 130 to 162 months imprisonment. *See* Docket 42 (Statement of Reasons) (sealed) at 1.

[59] Docket 24 at 4

[60] *Id.* at 7–8.

[61] *Id.* at 12.

agreement."[62]

During the plea colloquy, Mr. Washington confirmed with the Court that he had "been able to talk to [his] lawyer, Mr. Wells, about the charge – all these charges against [him.]"[63] When asked if his trial counsel was "aware of all the facts that would be important to defend [him] against the charges," Mr. Washington replied, "Yes, I guess so."[64] The Court asked whether Mr. Washington's trial counsel had "answered any questions that [Mr. Washington had] asked."[65] Mr. Washington said, "Yes, ma'am."[66] And when asked if he was "satisfied with the legal representation and advice that [he had] received from [his trial counsel,]" Mr. Washington replied, "Yes, I am."[67] Mr. Washington's trial counsel confirmed that he and Mr. Washington had "gone through every page and every word in this plea agreement,"[68] and Mr. Washington confirmed that he had "read through every page of" it.[69] The Court then confirmed that it "did not see other terms regarding agreements for sentencing. So essentially, open sentencing."[70] The Court expressly

---

[62] *Id.* at 11.

[63] Docket 59 (Change of Plea Hearing Transcript) at 7.

[64] *Id.*

[65] *Id.*

[66] *Id.*

[67] *Id.*

[68] *Id.* at 8.

[69] *Id.* at 9. The Court confirmed that the plea would incorporate "an adjustment for acceptance of responsibility, a waiver of appeal rights, most collateral attack rights . . . ." *Id.* at 10.

[70] *Id.* at 10.

confirmed with Mr. Washington that he understood that he faced a sentencing range "of ten years, up to a term of life imprisonment."[71] Mr. Washington, when asked whether he had spoken to his attorney about the Guidelines, responded, "I've done a lot of research on my own, so I'm well aware of what's going on."[72] The Court subsequently asked trial counsel whether he had "been able to talk some with Mr. Washington about the guidelines, as well?," to which trial counsel responded, "Absolutely."[73] Mr. Washington had no questions about the § 3553(a) factors.[74] The Court then asked Mr. Washington if "anyone [had] promised or guaranteed [him] anything that's not in this plea agreement to get [him] to change [his] plea," to which Mr. Washington responded in the negative.[75]

Mr. Washington's trial counsel has filed a declaration attesting that he "never told Mr. Washington that he would only be sentenced to 10 years."[76] Nor, he says, did he ever tell "Mr. Washington that the government had agreed to recommend only 10 years. Before he entered his guilty plea, Mr. Washington was well aware . . . that the court . . . could sentence him to more than 10 years."[77]

The Revised Presentence Investigation Report lists Count Three as having a

---

[71] *Id.* at 13.

[72] *Id.* at 17.

[73] *Id.*

[74] *See id.* at 18.

[75] *Id.* at 18.

[76] Docket 70 (signed on April 10, 2018 and filed on April 12, 2018) at 3.

[77] *Id.* at 3. His counsel adds, "I went over every page of the written [plea] agreement with Mr. Washington and I answered all of his questions, including his questions about how sentencing would work in this case." *Id.*

sentencing range of: "Minimum ten years imprisonment, maximum life imprisonment."[78] At sentencing, the Court asked Mr. Washington and his trial counsel whether they had "both had the opportunity to look at the presentence report and read that through?"[79] Trial counsel responded, "Yes."[80] When the Court sought to confirm with Mr. Washington that he had read the presentence report, Mr. Washington's response was not audible.[81] However, the Court responded, "All right," [82] which suggests that Mr. Washington had answered in the affirmative. The Court later addressed Mr. Washington, "[I]t's your turn, sir. If you had anything you wanted to say, today's the day and the time to say it, so go right ahead."[83] Mr. Washington said that he would "like to take responsibility for the crime and events, Your Honor."[84] He later repeated, "I want to apologize for my behalf and take responsibility."[85] Mr. Washington never asserted that he had ever understood that the Government had agreed he would receive a 120-month sentence.[86] The sentencing transcript does not reflect Mr. Washington's alleged standing up in court to object to his

---

[78] Docket 34 (sealed) at 1.

[79] Docket 60 at 4.

[80] *Id.*

[81] *See id.*

[82] *Id.*

[83] *Id.* at 25.

[84] *Id.*

[85] *Id.* at 27.

[86] *See generally id.*

162-month sentence.[87] Rather, that transcript reveals that Mr. Washington's trial counsel was an exemplary advocate on his client's behalf.[88]

Mr. Washington's factual claim highlights the Ninth Circuit's holdings that "[s]olemn declarations in open court carry a strong presumption of verity,"[89] and that a "court may expand the record with other documentary evidence prior to determining the need for an evidentiary hearing."[90] No evidence from 2016 supports Mr. Washington's recent sworn assertion that there was a 120-month minimum-sentence guarantee. Every other statement in the record refutes his claim. His trial counsel's declaration refutes his claim.[91] The sentencing transcript refutes his claim.[92] Based on the foregoing, Mr. Washington's minimum-sentence promise claim, first raised in June 2017, nearly one

---

[87] *See* Docket 49 at 3.

[88] *See* Docket 60 at 1–34. The vigorous advocacy of Mr. Washington's counsel is also apparent in counsel's objections to the Revised Presentence Investigation Report. *See* Docket 34 (sealed) at 43–46.

[89] *Rubalcaba*, 811 F.2d at 494 (quoting *Moore*, 599 F.2d at 314).

[90] *Espinoza*, 866 F.2d at 1070 (citation omitted).

[91] *See generally* Docket 70. And, in any event, trial counsel would not have the authority to guarantee any sentence. *See* Docket 59 at 15 (The Court asked: "[E]ven though you[, Mr. Washington,] and [your trial counsel] may have talked about how this case might sort out for you, if, at the end of the day, you disagreed with the Court's determination and thought it was unfair, improper, you couldn't appeal that to another court and ask for it to be reviewed, so long as the decision, the sentence that was imposed, was within the range that Congress has authorized. So any questions about that?" Mr. Washington responded, "No, Ma'am.").

[92] *See* Docket 60 at 1–34. *Cf. Shah*, 878 F.2d at 1160 ("The district court denied the section 2255 motion without a hearing based on a record which included the transcript of the plea hearing, lawyers' affidavits, interrogatories of Watts and his wife, the judge's own recollections of the proceedings, Watts's Rule 35 motion, and letters Watts wrote to the sentencing judge. In light of this record, we agreed with the district court that it was impossible to believe Watts's allegations. It was unbelievable that Watts would remain silent for so long.") (internal citations omitted).

year after sentencing, is "'palpably incredible or patently frivolous.'"[93] No evidentiary hearing is warranted on this claim. Because Mr. Washington's deficiency allegation fails, the Court declines to consider his prejudice allegation.[94] Accordingly, relief on this basis will be denied.

## 2. Voluntariness of Plea

Mr. Washington asserts that he entered "into a plea-agreement that was non-binding at a time when [he] was under severe [emotional] duress from being assaulted by the arresting officer and another prisoner, and detoxing from narcotics: heroin, methamphetamine and cocaine."[95] Mr. Washington provides no specific information in either his motion or his declaration that would support these claims.[96] For much the same reasoning that the Court has denied the ineffective assistance claim, and upon review of the entire record, particularly the transcripts of the change of plea and sentencing hearings,[97] the Court finds the involuntary plea claim to be "'palpably incredible or patently frivolous.'"[98]

## CONCLUSION

In light of the foregoing, IT IS ORDERED that Mr. Washington's Motion at Docket

---

[93] *Withers*, 638 F.3d at 1062–63 (quoting *Schaflander,* 743 F.2d at 717).

[94] *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one.").

[95] Docket 48 at 4.

[96] *See generally* Docket 48; *see also* Docket 49.

[97] *See generally* Docket 59; *see generally* Docket 60.

[98] *Withers*, 638 F.3d at 1062–63 (quoting *Schaflander,* 743 F.2d at 717).

48 is hereby DENIED.

The Court further finds that Mr. Washington has not made the requisite substantial showing of the denial of a constitutional right, and therefore a certificate of appealability will not be issued by this Court.[99] Mr. Washington may request a certificate of appealability from the Ninth Circuit Court of Appeals.

The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 31st day of August, 2018 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[99] *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (certificate of appealability may be granted only if applicant made "substantial showing of the denial of a constitutional right," *i.e.*, showing that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (internal quotations and citations omitted)).